HARRY E. COLLIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9273.   Promulgated September 1, 1927.

> Evidence does not show that any part of the price paid by petitioner for stock is properly attributable to the common stock issued as a bonus with the preferred, and *held* that the Commissioner did not err in assigning the entire cost to the preferred stock in computing the gain on sales of units consisting of one share of preferred and two of common.

*Harry J. Gerrity, Esq., Thomas O. Marlar, Esq.,* and *L. T. Konopak, C. P. A.,* for the petitioner.
*Harold Allen, Esq.,* for the respondent.

The Commissioner has determined deficiencies in income taxes for the years 1918 and 1919 in the respective amounts of $41,187.57 and $1,394.58. The petitioner contends that the Commissioner has erred in allocating to the preferred stock the entire price paid for certain preferred and common shares acquired in 1918 and thereafter sold.

FINDINGS OF FACT.

On June 25, 1918, the National Dairy Co., an Ohio corporation, entered into a contract with E. Claude Edwards and William Ford for the purchase of certain assets of the Ohio Dairy Co. which had previously been acquired by said Edwards and Ford. The consideration for the sale was the issuance by the National Dairy Co. of 6,500 shares, par value of $100 each, of its preferred stock, and 100,000 shares, par value of $25 each, of its common stock.

On September 7, 1918, the petitioner acquired all the rights and interest of Edwards and Ford under the contract of June 25, 1918, with the National Dairy Co. The Ohio Commissioner of Securities ordered the return to the National Dairy Co. of 30,000 shares of the common stock covered by the above contract, and also directed that any of the unissued stock of the company which might be issued or sold should be so issued or sold in units of one share of preferred stock and two shares of common stock. On September 10, 1918, the petitioner accepted the conditions prescribed by the Commissioner of Securities and received;

(1) 6,500 shares of preferred stock;

(2) 13,000 shares of common stock, representing a bonus of two shares of common for each of the 6,500 shares of preferred stock; and

(3) 70,000 shares of common stock.

The total cost to the petitioner of the above 6,500 shares of preferred and 83,000 shares of common stock was $520,312.58.

Subsequent to the foregoing transaction the petitioner during the calendar year 1918, sold 5,205 units of stock, consisting of one share of preferred and two shares of common, for which he received $520,500; and during the calendar year 1919, he sold 295 units of stock, in like manner, for $29,500. The total number of shares thus sold was 5,500 shares of preferred stock and 11,000 shares of common stock, and the petitioner still held 1,000 shares of preferred originally acquired and 72,000 shares of the common stock. In addition to the stock sold by the petitioner on his own behalf, he was required to and did sell for the account of and without cost to the National Dairy Co., 3,500 units of stock during 1918 and 1919.

In his income-tax return for 1918 the petitioner did not report any profit from the sale of the 5,205 shares of preferred stock in the manner above described, but in his 1919 income-tax return, after his receipts exceeded the total cost as computed by him, the petitioner reported a profit. The respondent regarded the 83,000 shares of common stock as having cost nothing, and held that a taxable proft was realized on the preferred stock sold at the rate of $19.952 for each share sold. The deficiency in tax of $41,187.57 for 1918 as determined by the Commissioner is based upon a profit of $103,850.16 alleged to have been derived from the sale of 5,205 shares of said preferred stock, and the deficiency in tax of $1,394.58 for 1919 is based upon a profit of $5,885.84 alleged to have been realized as a result of the sale of 295 shares of said stock.

There were no separate sales of preferred stock and/or common stock during the year 1918, but all sales were made in units consisting of one share of preferred and two shares of common; and there were no sales of stock other than the sales made by the petitioner.

#### OPINION.

ARUNDELL: The facts set forth in the findings were stipulated. The petitioner's position is that it is impossible to segregate the cost of the preferred and common stock acquired in 1918 and thereafter sold in part and consequently no income is realized until there has been a complete recovery of the cost. It is urged that the Commissioner has failed to follow his own regulations as they appear in article 39 of Regulations 45, the pertinent part of which article reads as follows:

* * * Where common stock is received as a bonus with the purchase of preferred stock or bonds, the total purchase price shall be fairly apportioned

between the stock and securtities purchased for the purpose of determining the portion of the consideration attributable to each class of stock or. securities and so representing its cost, but if that should be impracticable in any case, no profit on any subsequent sale of any part of the stock or securities will be realized until out of the proceeds of sales shall have been recovered the total cost.

It is true that the Commissioner has assigned the entire cost to the preferred stock, but we can not. say that his action in so doing is arbitrary. The Ohio Commissioner of Securities had directed that the stock be issued only in units of one share of preferred and two shares of common and had refused to sanction the transaction whereby petitioner was to receive 100,000 shares of common stock, pursuant to the original agreement between the National Dairy Co. on the one hand and Edwards and Ford on the other. As a result of the position taken by the Securities Commissioner of Ohio, 30,000 shares were surrendered to the National Dairy Co. by petitioner and this action was taken by him without in any way altering the price theretofore agreed upon.

That the common stock was offered as a bonus and its value, if any, was highly speculative and entirely prospective is clear from the record. The petitioner affords us no help in determining what value this stock may have, but contents himself with saying that a segregation can not be made. We are not persuaded by his argument. On the facts as they appear in this case we believe that the Commissioner's segregation of cost was reasonable and it will not be disturbed.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

SMITH did not participate.